UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BRANDON LUCIUS,

                Plaintiff,

     v.

NANCY A. BERRYHILL, Acting Commissioner of Social Security,

                Defendant.

Case No. C17-5266RSL

**ORDER REVERSING THE COMMISSIONER'S FINAL DECISION AND REMANDING FOR FURTHER PROCEEDINGS**

Brandon Lucius appeals the decision of the administrative law judge ("ALJ") finding him not disabled. He contends the ALJ erroneously rejected his testimony, and the opinions of Dr. Wingate, Dr. Bowes, and Mr. Childs. He argues, based on these errors, that the ALJ's residual functional capacity ("RFC") determination and hypothetical questions to the vocational expert ("VE") fail to account for all of his limitations. Mr. Lucius also contends the ALJ erred at step four by ignoring the reasoning level required to perform the job of a Cashier. Dkt. # 9 at 1. For the reasons below, the Commissioner's final decision is **REVERSED** and **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

## PROCEDURAL HISTORY

In November 2013, Mr. Lucius applied for Social Security Disability, and Supplemental Security Income benefits under Titles II and XVI alleging disability as of October 1, 2012.

Administrative Record ("AR") 220-26; 227-35. He later abandoned his Title II claim when he amended his onset date. AR 54-55. After conducting a hearing on May 21, 2015, the ALJ issued a decision finding Mr. Lucius not disabled. AR 3-49. The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. AR 6.

## THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[1] the ALJ found:

**Step one:** Mr. Lucius has not engaged in substantial gainful activity since November 5, 2013.

**Step two:** Mr. Lucius has the following severe impairments: major depressive disorder, generalized anxiety disorder, borderline personality disorder, right shoulder tendinopathy status post acromioplasty, status post right hand tendon repair, and obesity.

**Step three:** These impairments do not meet or equal the requirements of a listed impairment.[2]

**Residual Functional Capacity:** Mr. Lucius can perform light work except he can occasionally push and pull and frequently reach overhead, handle and finger with the right upper extremity; occasionally climb ladders, ropes, and scaffolds; frequently crawl; and tolerate concentrated exposure to excessive vibration and hazards like unprotected heights and moving machinery. Mentally he can understand and remember simple job instructions; perform simple, routine, and repetitive tasks; make simple decisions; tolerate simple changes in work settings; maintain attention and concentration for two hour intervals to complete such tasks without more than normally expected brief interruptions. Socially he can tolerate superficial interaction with coworkers, supervisors and the public.

**Step four:** Mr. Lucius can perform past relevant work as a cashier.

**Step five:** Alternatively, there are jobs that exist in significant numbers in the national economy that Mr. Lucius can perform.

AR 35-44.

---

[1] 20 C.F.R. §§ 404.1520, 416.920.

[2] 20 C.F.R. Part 404, Subpart P. Appendix 1.

**DISCUSSION**

The Court will reverse the ALJ's decision only if it is not supported by substantial evidence in the record as a whole or if the ALJ applied the wrong legal standard. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). The ALJ's decision may not be reversed on account of an error that is harmless. *Id.* at 1111. Where the evidence is susceptible to more than one rational interpretation, the Court must uphold the Commissioner's interpretation. *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir.2008).

**A.      Evaluation of the Medical Evidence and Other Source Evidence**

Mr. Lucius argues the ALJ erroneously rejected the opinions of Terilee Wingate, Ph.D., Tasmyn Bowes, Ph.D., and Cephus Child, MHP. Dkt. # 9 at 4-13.

The ALJ determines credibility and resolves ambiguities and conflicts in the medical evidence. *See Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is inconclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." *Morgan v. Comm'r, Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." *Id*. at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." *Reddick*, 157 F.3d at 725. The ALJ does this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id*. The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of a physician. *Lester v. Chater*, 81

F.3d 821, 830 (9th Cir. 1996). Even when a physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Id*. at 830-31.

The ALJ must also consider relevant evidence from other sources, not just evidence provided by acceptable medical sources. Acceptable medical sources include licensed physicians and licensed psychologists, but not counselors or mental health professionals. 20 C.F.R. §§ 404.1513(a)(1) and (3); 416.913(a)(1) and (3). Physician assistants are not "acceptable medical sources" regarding what a claimant can still do. *See* 20 C.F.R. § 416.913(a). The ALJ may evaluate opinions of other medical sources using the same factors applied to evaluate medical opinions of acceptable medical sources. Social Security Ruling ("SSR") 06-03p. These factors include the length and frequency of the treating relationship, how consistent the opinion is with other evidence, the evidence the source presents to support the opinion, how well the source explains the opinion, whether the source has a specialty or area of expertise related to the impairment, as well as any other relevant factors. *Id*.; *see also* 20 C.F.R. § 404.1527(d). But the ALJ may give less weight to opinions of other medical sources than to those of acceptable medical sources. SSR 06-03p. The ALJ must give germane reasons for rejecting opinions from other sources that are not acceptable medical sources. *Dodrill v. Shalala,* 12 F.3d 915, 919 (9th Cir. 1993).

### 1. *Terilee Wingate, Ph.D.*

The ALJ noted Dr. Wingate evaluated Mr. Lucius' mental condition in April 2013, October 2013, and April 2015. AR 41. Dr. Wingate diagnosed Mr. Lucius with Depressive Disorder, General Anxiety Disorder, Major Depressive Disorder and Borderline Personality Disorder. AR 377-84; 355-66; 567-75. As the ALJ noted, Dr. Wingate opined that Mr. Lucius

was markedly limited in communicating and performing effectively in a work setting and in completing a normal workday and workweek without interruptions from psychologically based symptoms. AR 41.

The ALJ gave Dr. Wingate's opinions "little weight" "because they are largely based on the claimant's subjective allegations," the doctor did not review plaintiff's treatment records, and plaintiff's treating doctors "have not diagnosed the claimant with borderline personality disorder." *Id*. The Commissioner argues the ALJ properly discounted Dr. Wingate's opinions as based on claimant's non-credible testimony and because the doctor did not review plaintiff's treatment records. Neither argument is persuasive.

If a medical source's opinions are based "to a large extent" on an applicant's self-reports and not on clinical evidence, and the ALJ finds the applicant not credible, the ALJ may discount the source's opinion. *Tommasetti v. Astrue*, 533 F.3d at 1041. However, when an opinion is not more heavily based on a patient's self-reports than on clinical observations, there is no evidentiary basis for rejecting the opinion. *See Ryan v. Comm'r of Soc. Sec*., 528 F.3d 1194, 1199–1200 (9th Cir. 2008). Additionally, an ALJ does not provide clear and convincing reasons for rejecting an examining doctor's opinion by questioning the credibility of the patient's complaints where the doctor does not discredit those complaints and supports her ultimate opinion with her own observations. *Edlund v. Massanari*, 253 F.3d 1152, 1159 (9th Cir. 2001).

Here the record does not indicate Dr. Wingate questioned Mr. Lucius' credibility or believed he was malingering. The record also does not indicate Dr. Wingate's opinions were based heavily or primarily on Mr. Lucius' statements. To be sure, the doctor considered Mr. Lucius' statements, but she also conducted a clinical interview, mental status examinations, and administered standardized screening assessments such as the Beck Depression Inventory II

("BDI II") and the Beck Anxiety Inventory ("BAI"). *See e.g.* AR 378, 573. Moreover, "[t]he report of a psychiatrist should not be rejected simply because of the relative imprecision of the psychiatric methodology." *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017) (citations omitted). "Psychiatric evaluations may appear subjective, especially compared to evaluation in other medical fields. Diagnoses will always depend in part on the patient's self-report, as well as on the clinician's observations of the patient." *Id*.

Turning to the Commissioner's second argument, she provides no authority or explanation for the rejection of Dr. Wingate's opinions simply because the doctor did not review Mr. Lucius' medical records. Dkt. # 10 at 9-10. There is no indication in the record that this is a valid basis on which to reject the doctor's opinion. The ALJ's finding is thus an invalid conclusory statement. As the Court of Appeals in *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir.1988), explained:

> To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required, even when the objective factors are listed seriatim. The ALJ must do more than offer his own conclusions.

Here, the ALJ's decision runs afoul of this requirement. The ALJ did nothing more than provide a conclusory statement—the doctor did not review records—which is the type of statement that fails to achieve the level of specificity required to reject a medical opinion.

In sum, the ALJ erred in rejecting Dr. Wingate's opinions. The error is harmful because the ALJ failed to include all of the limitations assessed by Dr. Wingate and failed to include the limitations in the hypothetical questions that were posed to the vocational expert. *See* 20 C.F.R. § 416.945(a) (in determining a claimant's RFC, an ALJ must assess all the relevant evidence, including medical reports and witnesses' descriptions of limitation, to determine what capacity

the claimant has for work); *see also Thomas v. Barnhart*, 278 F.3d 947, 956 (9th Cir.2002) (quoting *Flores v. Shalala*, 49 F.3d 562, 570–71 (9th Cir. 1995)) ("[H]ypothetical questions that an ALJ poses to a VE to determine what work a claimant can perform must include all of the claimant's functional limitations, both physical and mental supported by the record.") (internal quotation marks omitted).

The Court also notes the ALJ rejected Dr. Wingate's opinions on the grounds that Mr. Lucius' treating doctors did not diagnose Borderline Personality Disorder. The Commissioner does not defend this ground, which the Court accepts as a concession of error. In any event, the Court finds this is not a valid ground. It again is nothing more than an unadorned conclusory statement. Moreover, it is inconsistent with the ALJ's own step two determination that Mr. Lucius' Borderline Personality Disorder is a medically determinable condition and is severe. AR 35.

### 2. *Tasmyn Bowes, Ph.D.*

Dr. Bowes examined Mr. Lucius in October 2012 and opined that he was markedly limited in the ability to perform activities within a schedule, maintain regular attendance and complete a normal workday or workweek without interruptions from psychologically based symptoms. AR 402-15. The ALJ rejected Dr. Bowes' opinion on the grounds:

> they were based upon the claimant's condition in October 2012, before the claimant began mental health treatment. Moreover, Dr. Bowes' opinion is based largely on the claimant's subjective allegations rather than any examination findings.

AR 42. Mr. Lucius argues the ALJ erred because the ALJ is required under C.F.R § 416.912(d) to develop a claimant's medical record for at least 12 months preceding the date a disability application is filed, and because Dr. Bowes' did not "over-rely" on plaintiff's statements in reaching her opinions. Dkt. # 11 at 4-5. The argument is misdirected. The regulation does not

ORDER REVERSING THE COMMISSIONER'S FINAL
DECISION AND REMANDING FOR FURTHER
PROCEEDINGS - 7

require the ALJ to accept all medical evidence that falls within 12 months of the disability application filing period. It simply requires the ALJ to gather and consider such evidence, and that is what the ALJ did here by noting Dr. Bowes' opinions and setting forth reasons to reject them.

The ALJ may validly reject evidence that predates the relevant period and, therefore, properly limited her analysis to the medical evidence in the record that follows plaintiff's alleged onset date. *See Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir.2008) ("Medical opinions that predate the alleged onset of disability are of limited relevance."). *See also Burkhart v. Bowen*, 856 F.2d 1335, 1340 n.1 (9th Cir.1988) ("The ALJ correctly rejected this evidence on the grounds that it is not probative both because it is prior to the relevant time period and inconclusive since the last notation was that the depression was improved.").

Here the Court cannot say the ALJ unreasonably discounted Dr. Bowes' opinions on the grounds they were rendered 12 months before the onset of plaintiff's disability, and because the opinions were given before Mr. Lucius began mental health treatment. Mr. Lucius disagrees, arguing that Dr. Bowes' opinion is consistent with Dr. Wingate's opinions, and thus Dr. Bowes' opinion cannot be discounted on the grounds they were rendered pre-treatment. But this assumes Dr. Wingate's opinions must be accepted, *in toto*, which is a determination which has not yet been made. The Court accordingly cannot find at this point that the ALJ harmfully erred. On remand, the ALJ is free to revisit Dr. Bowes' opinions. It may be that the ALJ will conclude more weight should be given to Dr. Wingate's opinions, and thus more weight to Dr. Bowes' opinions. But that is a determination for the ALJ to make.

### 3. *Cephus Childs, MHP*

Mr. Childs has been Mr. Lucius' therapist since February 2015. In May 2015, Mr. Childs

opined that Mr. Lucius' anxiety and depression precluded the following mental activities for 30% of a workday: understanding, remembering and carrying out detailed instructions; maintaining attention and concentration for extended periods; performing activities within a schedule, maintaining regular attendance, and working in coordination with or in proximity to others without being unduly distracted. AR 41.

The ALJ rejected Mr. Childs' opinions as:

> unsupported by the claimant's mental health treatment records including Mr. Childs' own treatment notes, because Mr. Childs' treating relationship prior to his opinion was relatively brief and because Mr. Childs did not support his conclusions with explanations.

*Id*. The ALJ further noted Mr. Childs stated Mr. Lucius appeared 'mildly symptomatic" and "somewhat reserved," and that he told Mr. Childs he could not work "due to his physical limitations." *Id*. Mr. Lucius argues the ALJ erred because none of the reasons the ALJ gave are germane. However, the ALJ may give less weight to a medical opinion that is brief, conclusory, and inadequately supported by medical records. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). Here Mr. Childs' "Medical Source Statement" notes numerous limitations but contains no explanations. The Court cannot say the ALJ unreasonably discounted the limitations noted in the Statement on the ground that Mr. Childs provided no explanations for his opinions.

The Court also cannot say it was unreasonable for the ALJ to find that the treatment records do not support Mr. Childs' opinions. Mr. Childs first saw Mr. Lucius in February 2015. AR 702-10. He diagnosed him with depression and anxiety based upon what Mr. Lucius told him. The records from the initial February 2015 intake do not contain a mental status exam or test results from standardized screening tests. *Id*. At the initial intake, Mr. Childs noted Mr. Lucius' comments about how he was depressed and anxious every day, he has poor

concentration, he is fatigued and restless, and his mental problems cause "strife with his significant other." AR 710. Mr. Lucius told Mr. Childs he is unable to maintain employment for long periods of time and tends to isolate himself. *Id*. But while Mr. Childs recorded Mr. Lucius' comments, the initial intake records provide no explanation about how or why Mr. Childs believes Mr. Lucius' mental problems prevent him from understanding, remembering and carrying out detailed instructions; maintaining attention and concentration for extended periods; performing activities within a schedule, maintaining regular attendance, and working in coordination with or in proximity to others without being unduly distracted for 30% of a workday. In other words, Mr. Childs provides no explanation of how Mr. Lucius' statements establish the 30% workday limitation. Similarly, Mr. Childs' subsequent treatment records contain no findings or discussion that would tend to support his opinion that Mr. Lucius' mental problems preclude him from performing numerous work activities for 30% of a workday.

Mr. Lucius also argues the ALJ's decision does not set forth the exact pages in the record that support the ALJ's findings, and that the Court should thus find the ALJ erred and disregard the Commissioner's defense of the ALJ's determination. Dkt. # 11 at 6. But the ALJ did note he was rejecting Mr. Childs' opinions based upon the contents of the source statement Mr. Childs prepared (Ex. 19) and the contents of Mr. Childs' treatment records (Ex. 18F). AR 41-2. These records are not lengthy, and the Court concludes the ALJ sufficiently specified the records upon which he relied in discounting Mr. Childs' opinions.

The ALJ gave other reasons to discount Mr. Childs' opinions. The Court, however, need not determine whether the ALJ erred in these respects because any error would not negate the validity of the overall credibility determination and thus would be harmless. *See Carmickle*, 533 F.3d at 1162. The Court accordingly affirms the ALJ's assessment of Mr. Childs' opinions.

B.  **Evaluation of Mr. Lucius' Testimony**

Mr. Lucius contends the ALJ erred in failing to provide a specific reason to reject his testimony that his "sleep disturbances" affect his ability to stay on task and lower his energy for work as required by SSR 16-3p. Dkt. # 9 at 14, Dkt. # 11 at 7. As an initial matter, the ALJ did not erroneously fail to apply SSR 16-3p in assessing Mr. Lucius' testimony. The SSR was promulgated in 2016, and it was thus impossible for the ALJ to apply it when he issued his decision in 2015.

The ALJ in this case did not find malingering and was therefore required to provide clear and convincing reasons to reject Mr. Lucius' testimony. *Smolen v. Chater*, 80 F.3d 1273, 1283-84 (9th Cir. 1996). In assessing a claimant's testimony, the ALJ may consider "ordinary techniques of credibility evaluation" including the claimant's reputation for truthfulness, inconsistencies in her testimony or between her testimony and conduct, her daily activities, work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which claimant complains. *Id*. at 1284.

Because an ALJ must provide clear and convincing reasons, generalized, conclusory findings do not suffice. *See Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir.2004) (the ALJ's credibility findings "must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony") (internal citations and quotation marks omitted). *See id*.

Here the ALJ noted Mr. Lucius testified about mental and physical limitations. AR 39. The ALJ rejected his testimony about his mental limitations on the grounds that medications provide "some relief," that Mr. Lucius has not reported suicidal or homicidal ideation, and that he has endorsed relief of his anxiety and mood swings. *Id*. The ALJ also rejected Mr. Lucius'

testimony because "despite the claimant being referred for therapy in February 2014, he did not see a therapist until February 2015, suggesting that the claimant's condition has been less severe than he alleges and that the claimant's condition could further improve with therapy." *Id*. The Commissioner defends the ALJ arguing that under *Warre v. Comm'r*, 439 F.3d 1001, 1006 (9th Cir. 2006), an impairment that can be controlled is not disabling. Dkt # 10 at 6.

The ALJ's reliance on the efficacy of plaintiff's medications is not supported by substantial evidence. Both Dr. Wingate and Mr. Childs gave opinions during a time period in which Mr. Lucius was taking medications. They nonetheless opined Mr. Lucius was far more limited than the ALJ assessed. Additionally, as the ALJ acknowledged, Mr. Lucius indicated he was not satisfied with his antidepressant medications. AR 39. The record accordingly does not indicate Mr. Lucius' medications were sufficiently effective as to render him not disabled. *See e.g. Laborin v. Berryhill*, 692 Fed. Appx. 959, 961 (9th Cir. 2017) (unreported) ("Although there is some evidence that Laborin received partial relief from epidural injections (and perhaps from medications), this evidence must be taken in the context of Laborin's overall health, which the record shows was characterized by severe pain.").

The ALJ also erred in discounting Mr. Lucius' testimony on the ground that it took him a year to begin mental health therapy. As the Ninth Circuit has observed, "it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir.1996) (citations and quotations omitted); *see also Garrison v. Colvin*, 759 F.3d 995, (9th Cir. 2014); *Martinez v. Colvin*, No. 13-2736, 2014 WL 3809048, at *12 (D. Ariz. Aug.1, 2014) (finding noncompliance with mental health treatment not to be an appropriate basis for the ALJ to discount claimant's credibility).

The ALJ also rejected Mr. Lucius' testimony about his physical limitations. AR 39-40.

"[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Molina v. Astrue*, 674 F.3d at 1111 (citing *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009). Mr. Lucius does not address the ALJ's findings and presents nothing showing the ALJ erroneously rejected his testimony about his physical limitations. He has thus failed to meet his burden of proof that the ALJ harmfully erred. Additionally, he has waived the argument. A claim barely contended, unsupported by explanation or authority, may be deemed waived. *See Northwest Acceptance Corp. v. Lynnwood Equip., Inc.*, 841 F.2d 918, 923-24 (9th Cir.1996) (party who presents no explanation in support of claim of error waives issue); *see also Independent Towers of Washington v. Washington*, 350 F.3d 925, 929 (9th Cir.2003).

In sum, the ALJ erred in rejecting Mr. Lucius' testimony about his mental limitations. Plaintiff failed to address the ALJ's rejection of plaintiff's testimony about his physical limitations, and the Court accordingly will not disturb the ALJ's findings as to physical limitations.

## C. Step Four and Step Five Findings

Because the ALJ erred in rejecting Dr. Wingate's opinions and plaintiff's testimony about his mental limitations, it would be premature for the Court to address plaintiff's arguments that the ALJ erred at steps four and five. On remand, the ALJ must reassess the doctor's opinions and plaintiff's testimony, develop the record as appropriate, and determine at that point whether plaintiff retains the RFC to perform past relevant work at step four or other jobs in the national economy at step five.

## CONCLUSION

For the foregoing reasons, the Court concludes that the ALJ harmfully erred in rejecting Dr. Wingate's opinions and Mr. Lucius' testimony about the severity of his mental limitations.

Mr. Lucius argues the Court should remand the matter for an award of benefits. Dkt. # 9 at 17. The Court may remand for an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). This occurs when: (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence. *Id*. at 1076-77.

Here the ALJ must reweigh Dr. Wingate's opinions and Mr. Lucius' testimony about the severity of his mental limitations. As these outstanding matters must still be resolved before a disability determination can be made, the Court concludes it is appropriate to remand the matter for further administrative proceedings. The Court accordingly **REVERSES** the Commissioner's final decision and **REMANDS** the case for further administrative proceedings under sentence four of 42 U.S.C. § 405(g). On remand, the ALJ shall reassess Dr. Wingate's opinions and plaintiff's testimony about his mental limitations, develop the record and reassess plaintiff's RFC as needed, and proceed to steps four and five as appropriate.

Dated this 27th day of February, 2018.

ROBERT S. LASNIK
United States District Judge